IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| Gabriel Cornelius Moore,<br><br>      Plaintiff,<br>v.<br><br>Pinehurst Auto Investors I, LLC d/b/a Pinehurst Kia; Pinehurst Auto Investors II, LLC d/b/a Pinehurst Kia,<br><br>      Defendants. | Civil Action No.: 1:16-cv-580<br><br><br><br>**COMPLAINT**<br>**JURY TRIAL DEMANDED** |

For this Complaint, Plaintiff, Gabriel Cornelius Moore, by undersigned counsel, states as follows:

## PRELIMINARY STATEMENT

1. This is an action for statutory, actual and punitive damages, and for declaratory and injunctive relief brought pursuant to the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, Regulation Z, 12 C.F.R. §226.1, *et seq.* ("TILA"), the Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.* ("ECOA"), and the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA").

## JURISDICTION AND VENUE

2. This court has federal question jurisdiction over this matter pursuant to the Truth-in-Lending Act, 15 U.S.C. § 1601, *et seq.*, the Equal Credit Opportunity Act, 15 U.S.C. § 1691, *et seq.*, and the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*

3. There is supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

4. Venue is appropriate in this District pursuant to 28 U.S.C. § 1391 in that a substantial part of the events giving rise to Plaintiff's claims occurred within this District and Defendants are subject to personal jurisdiction in this District.

## PARTIES

5. Plaintiff, Gabriel Cornelius Moore ("Plaintiff"), is an individual residing in Candor, North Carolina.

6. Defendant Pinehurst Auto Investors I, LLC d/b/a Pinehurst Kia ("Pinehurst One"), is a North Carolina business entity with a principle place of business at 10910 U.S. HWY 15-501, Southern Pines, North Carolina 28387. Pinehurst One is engaged in the business of advertising, selling, and registering motor vehicles within the jurisdiction of this Court.

7. Defendant Pinehurst Auto Investors II, LLC d/b/a Pinehurst Kia ("Pinehurst Two," and together with Pinehurst One, the "Dealership" and/or "Defendants"), is a North Carolina business entity with a principle place of business at 10910 U.S. HWY 15-501, Southern Pines, North Carolina 28387. Pinehurst Two is engaged in the business of advertising, selling, and registering motor vehicles within the jurisdiction of this Court.

8. Upon information and belief, Pinehurst Kia is an assumed name of either Pinehurst One or Pinehurst Two that sold a vehicle at issue in this action to the Plaintiff.

## STATEMENT OF FACTS

9. On or about June 25, 2015, Plaintiff visited the Dealership and agreed to purchase a 2015 Kia Forte, Vehicle Identification Number KNAFX4A63F5346939 (the "Vehicle") from the Dealership.

10. Plaintiff agreed to a Vehicle purchase price of $20,138.99, with a total sale price of $31,979.00 including taxes, fees, and finance charges.

11. Plaintiff put $2,000.00 as a down payment, and financed the remainder of the sale price through the Dealership.

12. The same day, June 25, 2015, the Dealership advised Plaintiff that he was approved for financing.

13. In connection with the Vehicle's purchase, the Dealership presented Plaintiff with a Retail Installment Contract (the "Installment Contract") which contained a number of TILA mandated disclosures, as well as the terms of financing and the schedule of payments.

14. The Installment Contract identifies Pinehurst Kia as the "Seller" and "Creditor" of the Vehicle.

15. The Installment Contract identifies Plaintiff as the "Buyer" of the Vehicle.

16. The Installment Contract reflected that the Vehicle's purchase price was funded with 75 monthly payments of $399.72, with the first payment due on August 9, 2015.

17. The Installment Contract also provided that Plaintiff promises to repay the Dealership the amount financed according to the payment schedule set in the Installment Contract.

18. On the same date, the Dealership also required Plaintiff to sign a document entitled "Conditional Delivery Agreement and Power of Attorney" which, among other things, contained language purporting to relieve the Dealership from its legal status of "creditor," referring instead to some undisclosed third party as a "creditor" and/or "lender" (hereinafter referred to as the "Spot Delivery Agreement").

19. The Installment Contract and the Spot Delivery Agreement completely contradict one another. In pertinent part, the Installment Contract provides as follows:

> You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay the Seller – Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will

3

Case 1:16-cv-00580-WO-LPA   Document 1   Filed 06/07/16   Page 3 of 10

figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract."

* * *

**"HOW THIS CONTRACT CAN BE CHANGED**. This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding.

20. The Dealership unilaterally nullified the Installment Contract disclosures through the following provisions in the Spot Delivery Agreement:

"1. DEALER's obligations to sell the SUBJECT VEHICLE to PURCHASER and execute and deliver the manufacturer's certificate of origin or certificate of title to the SUBJECT VEHICLE are expressly conditioned on LENDER's approval of PURCHASER's application for credit."

* * *

"2. In the event LENDER notifies DEALER that LENDER is, for any reason, refusing to finance PURCHASER's purchase of the SUBJECT VEHICLE, DEALER shall notify PURCHASER who shall be required to immediately return the SUBJECT VEHICLE to the dealership."

* * *

"3. In the event DEALER provides notice to PURCHASER to return the SUBJECT VEHICLE to the dealership as provided in Paragraph 2 above, any purchase money security agreement and any contract of sale, buyer's order or purchase order for the SUBJECT VEHICLE shall be void and of no effect, and except as expressly provided in this instrument and otherwise required by law, neither party to this agreement shall have any further obligation to the other. In the event PURCHASER refuses or otherwise fails to immediately return the SUBJECT VEHICLE to the dealership after DEALER has provided notice as provided in Paragraph 2 above, PURCHASER hereby agrees that DEALER shall at any time thereafter have the right to repossess the SUBJECT VEHICLE without PURCHASER's knowledge or consent by any lawful means, and PURCHASER shall thereupon be liable to DEALER for any and all costs incurred by DEALER in accomplishing such repossession, including but not limited to DEALER's reasonable attorney 's fees."

21. About three weeks after Plaintiff took possession of the Vehicle, and about four weeks before the first installment payment was due, the Dealership informed Plaintiff that his

4

financing had not, in fact, been approved and unless Plaintiff executed a new retail installment sale contract with different terms, the Dealership would repossess the Vehicle.

22. Plaintiff responded that on the day he executed the Vehicle purchase documents, the Dealership ran Plaintiff's credit report and advised him that he was approved for financing on the terms specifically listed in the Installment Contract.

23. Nonetheless, the Dealership refused to honor the Installment Contract and the Dealership repossessed the Vehicle from Plaintiff's house.

24. Sometime thereafter, the Plaintiff, under protest, signed a new retail installment sale contract that contains a significantly higher interest rate and required an *additional* $400.00 down payment, following which the vehicle was returned to Plaintiff.

25. At no time did the Dealership supply a written notice explaining why the extension of credit was revoked or why the previously approved Installment Contract was cancelled.

## COUNT I
## VIOLATION OF TILA – 15 U.S.C. § 1601, *et seq.*

26. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

27. At all times relevant hereto, Dealership regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than four installments. Dealership is a person to whom the transaction which is the subject of this action is initially payable, making the Dealership the creditor within the meaning of TILA, 15 U.S.C. § 1602(f) and Regulation Z § 226.2(a)(17).

28. 15 U.S.C. § 1638 provides that the creditor shall disclose the "amount financed," the "finance charge," the "annual percentage rate," as well as other items so that the consumer can make an informed decision regarding the credit being offered.

29. 15 U.S.C. § 1638 also governs the timing of these disclosures and prohibits any conduct that would prevent the consumer from having a meaningful opportunity to review the terms of the credit being offered.

30. The Dealership's 'Spot Delivery' provisions constitute an illegal waiver of its statutory obligations and consumer rights because the Dealership uses it to circumvent its TILA obligations under the Installment Contract, which concomitantly waives the buyer's statutory and contractual rights.

31. The statutes and the Installment Contract provide that the buyer-signed contract is the parties' final integrated writing and is binding on the Dealership and the consumer at the time of signing and vehicle delivery, i.e., consummation.

32. The Dealership, in fact, had not arranged financing at the time purchase of the Vehicle was consummated, and the disclosures contained in the signed Installment Contract are false and therefore violate TILA and Regulation Z.

33. The Installment Contract and these consumer protection statutes are to be construed liberally in favor of consumers and strictly against the seller.

34. This combination of, on the one hand, the extension of credit in unambiguous terms, while on the other hand simultaneously withdrawing the extension of credit in the same document violates TILA.

35. The Dealership purports to condition the Installment Contract on its desire and ability to sell its contractual obligation to a third party, thus illegally extending consummation to

6

a point in time when a third party might buy the Installment Contract, days after the buyer signs the agreement and the vehicle is delivered. TILA mandates that consummation occurs at the time buyers sign the Installment Contract. 12 C.F.R. §226.2(13).

36. The Dealership's acts and omissions are violations of TILA as TILA's purpose is to assure a meaningful disclosure of all material terms so that consumers will be able to compare more readily the various credit terms available to them and avoid the uninformed use of credit.

37. The Dealership makes it impossible to meaningfully compare terms that are cancellable or changeable at the Dealership's whim with credit terms proposed by its competitors. 15 U.S.C. §1601(a).

38. Upon information and belief, this is a common practice of the Dealership, and such a practice manifests a gross and willful contempt for the law.

39. As a result of these violations of TILA, the Dealership is liable to Plaintiff for actual damages; statutory damages equal to twice the finance charge; punitive damages; costs; and attorney's fees.

### COUNT II
### VIOLATION OF THE EQUAL CREDIT OPPORTUNITY ACT –
### 15 U.S.C. § 1691, *et seq.*

40. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

41. Plaintiff is a "person" as defined in the 15 U.S.C. § 1691a(f).

42. The Dealership is the "creditor" as defined in the 15 U.S.C. § 1691a(e).

43. Plaintiff submitted a credit application to the Dealership relating to his purchase of the Vehicle.

7

Case 1:16-cv-00580-WO-LPA   Document 1   Filed 06/07/16   Page 7 of 10

44. The Dealership was required under ECOA to take action on Plaintiff's credit application within 30 days.

45. The Dealership initially informed Plaintiff that his credit application for the Vehicle financing had been approved.

46. At the time the Dealership informed Plaintiff that his credit application was approved, the Dealership knew that the credit application had not been finally acted upon, and that the credit application approval was treated as conditional.

47. The Dealership later revoked the approval and constructively repossessed the Vehicle.

48. The initial credit approval by the Dealership was false, and the Dealership knew the notice was false at the time it was made, as it knew that it treated all credit approvals as conditional until it was able to resell the Installment Contract to a third party.

49. Therefore, the false notice credit approval by the Dealership was given in violation of 15 U.S.C. § 1691(d)(1).

50. Furthermore, following its revocation of credit, the Dealership failed to provide the written notice of adverse action in violation of 15 U.S.C. § 1691(d)(2).

51. For its violations of ECOA, the Dealership is liable to Plaintiff for actual damages, punitive damages of up to $10,000.00, and reasonable attorney's fees under 15 U.S.C. § 1691e.

## COUNT III
## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT –
## 15 U.S.C. § 1681, *et seq.*

52. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

53. The Dealership's constructive repossession of the Vehicle and revocation of its extension of credit under the Installment Contract was an "adverse action" within the meaning of the FCRA, 15 U.S.C. § 1681a(k).

54. The Dealership failed to provide the notice of adverse action as required under 15 U.S.C. § 1681m.

55. For its willful violation of the FCRA, the Dealership is liable to Plaintiff for his actual damages or statutory damages between $100.00 and $1,000.00, punitive damages, and reasonable attorney's fees pursuant to 15 U.S.C. § 1681n.

56. In the event that the FCRA violation is determined to be negligent rather than willful, the Dealership is liable to Plaintiff for his actual damages and reasonable attorney's fees under 15 U.S.C. § 1681o.

## COUNT IV
## BREACH OF GOOD FAITH AND FAIR DEALING OBLIGATION

57. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

58. By misrepresenting material facts and omitting material facts, Defendants did not perform its obligations to Plaintiff in good faith and therefore violated UCC §1-203.

59. The actions of Defendants as described in this Complaint constitute a breach of the good faith requirement, and as a proximate result, Plaintiff has sustained the damages set forth herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following relief:

    (a)    Statutory damages of twice the finance charge;

    (b)    Actual damages;

9

Case 1:16-cv-00580-WO-LPA   Document 1   Filed 06/07/16   Page 9 of 10

(c) Incidental damages and consequential damages;

(d) Punitive damages;

(e) Reasonable attorneys' fees; and

(f) Such other and further relief as this Court deems just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

Dated: June 7, 2016

                Respectfully submitted,

                By: /s/ Ruth Allen, Esq.
                Attorney for Plaintiff Gabriel Cornelius Moore
                LEMBERG LAW, L.L.C.
                43 Danbury Road
                Wilton, CT 06897
                Telephone: (203) 653-2250
                Facsimile:   (203) 653-3424
                Email: rallen@lemberglaw.com